

**SIGNED this 01st day of September, 2015.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **GARY R. ALEXANDER and** | § | **Case No. 12-50707** |
| **KAREN R. ALEXANDER,** | § | |
| | § | **Chapter 7** |
| Debtors. | § | |
| | § | |

**<u>MEMORANDUM OPINION DENYING DEBTOR'S MOTION FOR CONTEMPT AND</u>**
**<u>SANCTIONS FOR VIOLATION OF DISCHARGE ORDER (ECF NO. 40)</u>**

Came on to be considered the above-captioned Chapter 7 case, and in particular, Debtor's

Motion for Contempt and Sanctions for Violation of Discharge Order (ECF No. 40); the

Response to Debtor's Contempt Motion (ECF No. 53); the Parties' Post Hearing Briefing and

Proposed Findings of Fact and Conclusions of Law (ECF Nos. 58, 59, 60, 61); and arguments of

counsel at three separate hearings (June 18, 2015, June 22, 2015, and July 28, 2015). For the

reasons stated fully herein, the Court finds that Debtor's Motion for Contempt and Sanctions for Violation of Discharge Order (ECF No. 40) should be DENIED.

## JURISDICTION

Federal courts have an ongoing duty to examine their subject-matter jurisdiction, whether the issue is raised by the parties or sua sponte by the court. ***MCG, Inc. v. Great W. Energy Corp.***, 896 F.2d 170, 173 (5th Cir. 1990). In ***Stern v. Marshall***, the Supreme Court held that a bankruptcy court must have *both* statutory and constitutional authority to enter final judgment on certain state law claims. ***Stern v. Marshall***, 131 S. Ct. 2594, 2611 (2011) (finding that the bankruptcy court lacked the "judicial Power of the United States" under Article III of the United States Constitution to enter final judgment on a state law counterclaim)(emphasis added). Notwithstanding the Supreme Court's recent ruling in ***Wellness Int'l Network, Ltd. v. Sharif***, 135 S.Ct. 1932 (2015), the Court must still determine if it has the requisite authority to enter a final order in this matter.

A proceeding to enforce a discharge injunction is a core proceeding under § 157(b)(2)(O) of title 28. ***In re Gervin***, 300 F. App'x 293, 298 (5th Cir. 2008). Bankruptcy courts have jurisdiction over such cases and may even reopen a closed case to ensure that the purpose of its discharge order is not undermined. *Id*. Bankruptcy courts have the constitutional authority to hear and finally determine the scope of a debtor's discharge. ***Deitz v. Ford (In re Deitz)***, 469 B.R. 11, 23–24 (B.A.P. 9th Cir. 2012) *aff'd*, 760 F.3d 1038 (9th Cir. 2012). As such, the Court finds that it has the requisite statutory and constitutional authority to enter a final order in this proceeding.

## UNDISPUTED FACTS[1]

Debtor Gary Alexander ("Mr. Alexander") was a control person of Lighthouse Real Estate, Inc. ("Lighthouse") and RGB Development LLC ("RGB"). From June 2004 until September 2010, Lighthouse and RGB executed a series of Promissory Notes and Agreements in favor of several of the Respondents.[2] ECF No. 54.[3]

On March 5, 2012, Karen Alexander ("Mrs. Alexander") and Mr. Alexander filed a voluntary petition under Chapter 7 of the Bankruptcy Code under Case No. 12-50707 in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. *Id*. Debtors identified three life insurance policies ("Life Policies") as exempt on their Schedule C pursuant to 11 U.S.C. § 522(d)(7).[4] *Id*. The Life Policies were comprised of a $1,000,000.00 term life policy; $2,000,000.00 term life policy; and $75,000.00 term life policy. *Id*. Debtors scheduled several of the Respondents as creditors.[5] *Id*. No party objected to the exemption of the Life Policies. *Id*.

On June 4, 2012, several Respondents filed Adversary Case No. 12-05084 ("Dischargeability Action") against Mr. Alexander objecting to the dischargeabilty of the debts evidenced by the Lighthouse/RGB Notes (the "Notes) pursuant to §§ 523(a)(2) and (a)(19) for false pretenses, false representation, actual fraud, and violation of state securities law. *Id*. On June 7, 2012, the Order Discharging Debtor(s) was entered. ECF No. 17.

On June 11, 2012, Respondents—some later intervening—sued RGB and Lighthouse in connection with the Notes in the 216th Judicial District Court of Kendall County, Texas. ECF

---

[1] The parties filed a Joint Stipulation of Facts on June 17, 2015 (ECF No. 54).
[2] The parties' Joint Stipulation does not contain an explanation of these Notes. It appears to the Court that Mr. Alexander, through the entities Lighthouse and RGB Development, sold unsecured promissory as an investment opportunity in a real estate development near Boerne, Texas.
[3] All docket entries in Debtors' bankruptcy case (Case No. 12-50707) herein are referenced as "ECF No."
[4] Unless otherwise noted, all statutory references herein are to 11 U.S.C., *et seq*. (2012).
[5] *See* ECF No. 1, Schedule F- Creditors Holding Unsecured Nonpriority Claims (Debtors designated Respondents as creditors of "Husband.")

No. 54. On August 30, 2012, Respondents obtained an interlocutory Default Judgment in the RGB Lawsuit against Lighthouse. *Id.*

On September 18, 2012, the remaining Respondents intervened in the Dischargeabilty Action against Mr. Alexander. *Id.* On October 30, 2012, Mr. Alexander died. *Id.* The proceeds of the $1,000.000.00 and $2,000,000.00 Life Policies were funded to the beneficiaries in November 2012. *Id.* Debtor Karen Alexander ("Mrs. Alexander") was the beneficiary of the $2,000,000.00 Life Policy and one of the beneficiaries of the $1,000,000.00 Life Policy. *Id.*

On March 7, 2013, Respondents obtained summary judgment against RGB which incorporated the interlocutory judgments against Lighthouse in favor of the Respondents. *Id.* Then on March 26, 2013, Respondents filed suit against Mrs. Alexander in the 216th Judicial District Court of Kendall County, Texas (the "Post Discharge Lawsuit"). *Id.* On April 18, 2013, Mrs. Alexander filed a general denial answer in the Post Discharge Lawsuit. *Id.*

After Mr. Alexander's death, the parties in the Dischargeabilty Action filed an Agreed Motion to Abate Discovery and Motions so that parties could "evaluate causes of action and defenses, consider potential resolution of this matter, and for defendants' newly retained counsel to assess pretrial matters prior to a pretrial conference to be requested upon further motion to this court." Adv. ECF No. 40.[6] On May 14, 2013, the parties—counsels for Personal Representative of the Estate of Mr. Alexander and Mrs. Alexander Individually and counsels for Plaintiffs— filed an Agreed Order Dismissing Adversary Proceeding (the "Agreed Dismissal Order") (Adv. ECF No. 50). In the Agreed Dismissal Order, the parties agreed that:

1. Karen Alexander received a Chapter 7 discharge on June 7, 2012.

---

[6] All docket entries in the Dischargeabilty Action Adversary (Adv. Case No. 12-05084) herein are referenced as "Adv. ECF No."

2. Gary Alexander did not receive a Chapter 7 discharge on June 7, 2012 or any date thereafter because the plaintiffs timely filed their adversary proceeding prior to his discharge date of June 7, 2012. Gary Alexander cannot receive a Chapter 7 discharge because he is deceased. Gary Alexander's probate estate is precluded from seeking relief under the Bankruptcy Code.

3. In consideration of the dismissal of this adversary proceeding, Gary Alexander, Gary Alexander's probate estate, and its representatives, will not represent to any court that Gary Alexander received bankruptcy discharge in Chapter 7 case No. 12-50707 because he did not and now cannot receive a discharge.

4. If Plaintiffs re-file a like complaint in state court against the Estate of Gary Alexander within sixty (60) days after a Personal Representative for the Estate of Gary Alexander is appointed, the Personal Representative waives any right to assert any defense of limitations of laches to the Plaintiffs' claims asserted in the Dischargeabilty Action.

Following the death of two of Mrs. Alexander's counsel, Mr. Alex Katzman assumed representation of Mrs. Alexander in the Post Discharge Lawsuit. ECF No. 54. The jury trial in the Post Discharge Lawsuit is set for October 5, 2015. *Id.* On May 29, 2015, Respondent Attorneys received Mrs. Alexander's demand that Respondents immediately dismiss the Post Discharge Lawsuit, and Respondents declined. *Id.*

### DISCUSSION

Mrs. Alexander asserts that the Respondents violated the Discharge Order by initiating the Post Discharge Lawsuit and by seeking a judgment against Mrs. Alexander, post discharge, on a claim from which she has been discharged. ECF No. 40.  Mrs. Alexander argues that (i) the

5

dismissal of the adversary proceeding precludes any further litigation regarding RGB and Lighthouse Notes; (ii) Respondents cannot impose a constructive trust on the exempt property of Mrs. Alexander; and (iii) Respondents cannot now seek a determination of non-dischargeabilty. ECF No. 30. Respondents argue that (i) the investor's equitable interest rides through bankruptcy; (ii) the investor's claims against Mr. Alexander were not discharged; and (iii) the request for imposition of a constructive trust against the Proceeds of the Life Policies is not a pre-petition claim against Mrs. Alexander. Many of these arguments address the issues that are pending before the State Court in the Post Discharge Suit. The Court finds that the sole question before this Court is whether the Post Discharge Suit violates Mrs. Alexander's Discharge Order.

Section 524(a) ensures that a discharge will be completely effective and will operate as an injunction against the commencement or continuation of an action or employment of process to collect or recover a debt as a personal liability of the debtor. 8 *Collier on Bankruptcy* ¶ 524.02 (Alan N. Resnick & Henry J. Sommers, eds., 15th ed. rev. 3/06). An essential inquiry in determining the scope a discharge order is whether the debt sought to be collected is a pre-petition claim. *Id*.

A.      **To the Extent that Respondents' Claims are Pre-Petition Claims against Mr. Alexander, Respondents' Claims were Discharged.**

A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A). Under the Fifth Circuit's pre-petition relationship test, a claim arises at the time of the debtor's conduct forming the basis of liability if the claimant had some type of specific relationship with the debtor at that time. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1276 (5th Cir. 1994). Mr. Alexander had a pre-petition relationship with Respondent, as he executed the Notes, and therefore, Respondents' claims arose at the time of

6

Mr. Alexander's alleged tortious conduct occurred. Respondents allege that Mr. Alexander executed the Notes as part of a Ponzi scheme and used Respondents' funds to purchase and pay premiums on the Life Policies. ECF No. 53. Although the Court did not receive evidence on this issue, it is probable that all of this conduct occurred pre-petition.

Respondents argue that because Mrs. Alexander had no rights to the Life Policies' proceeds until after Mr. Alexander's death, the claim to impose a constructive trust did not accrue until after the death of the insured. ECF No. 53. A constructive trust is a remedy and not a cause of action. *Petitioning Creditors of Minpeco USA v. Swiss Bank Corp.* (*In re Minpeco, USA, Inc.*), 237 B.R. 12, 31 (Bankr. S.D.N.Y. 1997). As such, a constructive trust cannot afford an independent basis for holding a party liable. *Id*. While the remedy may not have accrued until after Mr. Alexander's death, the claim arose when Mr. Alexander's allegedly tortious action occurred.[7] As the parties recognized and this Court agrees, Respondents' claims were only against Mr. Alexander.[8]

Respondents adopt the position that Mr. Alexander never received a Chapter 7 discharge. Respondents filed their Dischargeabilty Action on June 4, 2012. Debtors both received a Chapter 7 discharge on June 7, 2012. Had Respondents' Dischargeabilty Action resulted in a finding of non-dischargeabilty, Mr. Alexander's Chapter 7 discharge would not have included Respondents' claims. Instead, Respondents agreed to dismiss their Dischargeabilty Action without a finding of non-dischargeabilty. Instead, the Agreed Dismissal Order (Adv. ECF No. 50) recites that Mr. Alexander did not and cannot receive a Chapter 7 discharge and that Mr. Alexander's probate estate nor representative will represent to any court that he did.

---

[7] The Court finds that it is not necessary or appropriate to determine whether it is proper for Respondents to allege a constructive trust over the Life Policies. This question is properly before the State Court.
[8] *See* Debtors' Schedule F; Hearing to Consider and Act Upon Debtor's Motion for Contempt on June 18, 2015; Status Hearing June 22, 2015; and Respondent's Post Hearing Brief (ECF No. 58).

Respondents argue that Mr. Alexander waived his discharge under § 727(a)(10). Section 727(a)(10) states: "The court shall grant the debtor a discharge, unless . . . the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter." Courts have read the plain language of this section to impose four requirements, namely that a waiver must be: (1) in writing, (2) signed by the debtor, (3) filed post-petition, and (4) approved by the court. *In re Akbarian*, 505 B.R. 326, 328 (Bankr. D. Utah 2014). In addition to determining whether these statutory requirements have been met, courts must also discern whether the debtor seeking a waiver of discharge is doing so knowingly, voluntarily, and with awareness of what consequences come from waiving a discharge in bankruptcy. *Id*. The Court finds that the language of the Agreed Dismissal Order does not explicitly waive Mr. Alexander's Discharge. It makes no mention of a waiver and instead makes incorrect factual recitations and legal conclusions. Because the Agreed Dismissal Order is premised upon incorrect statements of fact and law, it could not have been entered into with awareness. As such, Mr. Alexander did not waive his discharge.

Respondents also cite to *Wldyka v. Wells (In re Wells)*, for the proposition that because Mr. Alexander died during the pendency of the bankruptcy case, creditors can still assert claims against assets of a debtor's estate regardless of whether the debtor was discharge. 285 B.R. 921 (Bankr. W.D. Tex. 2002), ECF No. 59. The *Wladyka* case is inapposite to this matter because the debtor in *Wladyka* died before receiving a discharge, whereas Mr. Alexander died after he received a discharge. The *Wladyka* opinion notes that "[w]ere the issues of discharge to have been settled long before the death of the debtor, the impact of discharge on the probate estate would be quite different." 285 B.R. at 923. When a debtor receives a discharge of debts prior to death, the deceased debtor's pre-bankruptcy debts are discharged in the bankruptcy, and the

deceased debtor's exempt assets are passed to the probate estate free of the debt. *In re Lucio*, 251 B.R. 705, 709 (Bankr. W.D. Tex. 2000).

Because Mr. Alexander received a Chapter 7 discharge before he passed away and Respondents did not obtain a finding that their claims were non-dischargeable, all pre-petition claims against Mr. Alexander were discharged. As such, the Court must decide whether the Post Discharge Suit, that concerns claims against Mr. Alexander that were possibly discharged, violates Mrs. Alexander's Discharge Order.

**B.** **Respondents' State Court Suit does not Violate Debtor Karen Alexander's Discharge Order**

Mr. and Mrs. Alexander filed their Chapter 7 case together as joint debtors. ECF No. 1. Section 302 of the Bankruptcy Code provides for the filing of a joint case by a debtor and the debtor's spouse. Joint administration is designed for the ease of administration and to permit the payment of only one filing fee. *Reider v. Federal Deposit Ins. Corp. (In re Reider)*, 31 F.3d 1102, 1109 (11th Cir. 1994). Joint administration is thus a procedural tool permitting use of a single docket for administrative matters. *Id.* (citing Rule 1015, Advisory Committee Note (1983)). Used as a matter of convenience and cost saving, it does not create substantive rights. *Reider*, 31 F.3d at 1109.

Section 302, in authorizing a joint case, does not create a single joint debtor. 8 *Collier on Bankruptcy* ¶ 320.07 (Alan N. Resnick & Henry J. Sommers, eds., 15th ed. rev. 3/06. The plain language of the Order Discharging Debtor(s) states that the "court order grants a discharge to the *person* named as the debtor." ECF No. 17 (emphasis added). Additionally, a shared discharge

could also impermissibly create or alter substantive rights.[9]  Therefore, while docketed together for purposes of joint administration, each Debtor's discharge is distinct.

Mrs. Alexander only moves for a finding that her discharge was violated, and it is questionable whether she could assert a violation of Mr. Alexander's discharge in this context. *See **Johnson v. Gregory Cnty. Auditor (In re Johnson)***, 402 B.R. 313, 314 (B.A.P. 8th Cir. 2009) (finding that a party who was not the representative of debtor's probate estate lacked standing to initiate an action for violation of debtor's discharge).[10]  The Respondents' Post Discharge Suit only asserts claims against Mr. Alexander and therefore, could only violate Mr. Alexander's discharge.  Because Mrs. Alexander's discharge is distinct from Mr. Alexander's, Respondents' Post Discharge Suit does not violate Mrs. Alexander's discharge.

## CONCLUSION

Having considered the pleadings, stipulation of facts, and arguments of counsel, the Court finds that Respondents' Post Discharge Suit does not violate Mrs. Alexander's Discharge Order under § 524(a).

A separate order denying Debtor's Motion for Contempt and Sanctions for Violation of Discharge Order (ECF No. 40) will be entered.

---

[9] For instance, if one debtor spouse received a discharge but the joint debtor did not, the joint debtor could not bring an action for a violation of his or her spouse's discharge.

[10] Nothing in this Court's Opinion reflects upon Mrs. Alexander's ability to assert Respondents' claims against Mr. Alexander were discharged in Post Discharge Suit.  The Court only finds that the Respondents' Post Discharge Suit does not violate Mrs. Alexander's discharge order.